UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| S.B.[1] ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> **SALVATION ARMY** ) <br> ) <br> and ) <br> ) <br> **SALVATION ARMY SERVICES, INC.** ) <br> ) <br> Defendants. ) | Case No. _____ <br><br> **JURY TRIAL DEMANDED** |

# COMPLAINT

## PRELIMINARY STATEMENT

S.B. ("Plaintiff") brings this action under section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("section 504"), section 1557 of the Patient Protection and Affordable Care Act, 42 U.S.C. § 18116 ("section 1557"), and the Michigan Persons with Disabilities Civil Rights Act of 1976, Mich. Comp. Laws §§ 37.1101 *et seq.* ("MPDCRA") against Salvation Army and Salvation Army Services, Inc. ("Defendants") for failure to provide qualified American Sign Language ("ASL") interpreters to ensure that he has full and equal access to its rehabilitation services for individuals with addictions. Defendants refused to

---

[1] Plaintiff's Motion to Proceed Under a Pseudonym is filed contemporaneously.

1

provide qualified interpreters for all programs, services, and activities that S.B. was eligible to participate in, with the result that he was denied effective communication, isolated from others in the program, suffered severe emotional distress, and was not able to continue in the program. Plaintiff is at high-risk for relapse and seeks immediate re-enrollment in the program with qualified ASL interpreters provided to ensure effective communication for all programs, services, and activities. Plaintiff seeks declaratory and injunctive relief and damages to redress Defendants' failure to provide the necessary auxiliary aids or services to ensure effective communication as required by section 504, section 1557, and the MPDCRA, as well as reasonable attorneys' fees and costs.

## JURISDICTION AND VENUE

1. This Court has jurisdiction over the claims brought pursuant to 29 U.S.C. § 794 and 42 U.S.C. § 18116 because "district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C § 1331.

2. This Court has personal jurisdiction over the Defendants because Defendants do business in Michigan.

3. This Court has supplemental jurisdiction over the MPDCRA claim because the claim "is so related to claims in the action within such original

jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a).

4. Venue is proper in this district under 28 U.S.C. § 1391(b) because a "substantial part of the events or omissions giving rise to the claim occurred" in this judicial district.

## PARTIES

5. S.B. is a deaf individual who resides in Wayne County, Michigan.

6. Defendant Salvation Army is a social services organization that, *inter alia*, owns and operates rehabilitation centers for individuals seeking assistance overcoming addiction. Defendant Salvation Army owns and operates Monroe Harbor Light, a rehabilitation center located at 3250 N. Monroe Street, Monroe, MI 48162. Its resident agent is CSC-Lawyers Incorporation Service, 3410 Belle Chase Way, Suite 600, Lansing, MI 48911.

7. Defendant Salvation Army Services Inc. is a social services organization that, *inter alia*, owns and operates rehabilitation centers for individuals seeking assistance overcoming addiction. Defendant Salvation Army Services Inc. owns and operates Monroe Harbor Light, a rehabilitation center located at 3250 N. Monroe Street, Monroe, MI 48162. Its resident agent is CSC-Lawyers Incorporation Service, 3410 Belle Chase Way, Suite 600, Lansing, MI 48911.

3

8. Defendants are recipients of federal financial assistance because they accept, *inter alia*, federal grants from numerous federal executive agencies including but not limited to the Department of Housing and Urban Development, the Department of Veteran Affairs, the Department of Justice, the Department of Labor, the Department of Education, and the Small Business Administration.

## STATEMENT OF FACTS

9. Plaintiff, S.B., is a deaf individual.

10. S.B. is substantially limited in the major life activities of hearing, speaking, and communicating.

11. S.B. struggles to understand people who use spoken language.

12. S.B.'s primary means of communication is American Sign Language ("ASL"), a visual language with unique grammar and syntax which differs from English and other spoken languages.

13. For S.B. to discuss issues regarding health care or other social services and to participate in therapy sessions, support groups, lectures, and recreational activities, qualified ASL interpreters are necessary to ensure effective communication.

14. S.B. has experienced multiple substance addiction.

15. S.B. sought and continues to seek rehabilitation services to overcome his addictions.

16. Defendants operate rehabilitation facilities serving individuals with addictions.

17. One such facility is Monroe Harbor Light, which is located at 3250 N. Monroe Street, Monroe, MI 48162.

18. Monroe Harbor Light provides residential and out-patient substance abuse treatment.

19. Monroe Harbor Light's services include detox treatment, mental health counseling, peer counseling, case management, and support groups.

20. Monroe Harbor Light also holds itself out as having a "Deaf and Hard of Hearing Program."

21. Although Monroe Harbor Light bills itself as having a program for individuals who are deaf or hard of hearing, it does not make its programs, services, and activities fully accessible to individuals who are deaf or hard of hearing.

22. For instance, Monroe Harbor Light provides video remote interpreting ("VRI") that is ineffective and only provided during the mornings on Mondays, Wednesdays, and Fridays, even though the residential program also schedules activities the other four days of the week and in the afternoons every day of the week.

5

23. S.B. was referred to Monroe Harbor Light because it was reputed to have a program serving individuals who are deaf or hard of hearing.

24. S.B. also chose Monroe Harbor Light because the program would be fully paid for, and he would not have to pay out of pocket.

25. In July 2024, S.B. contacted Monroe Harbor Light and made an appointment to see their on-site therapist, Kristen Walsh.

26. On or about July 10, 2024, S.B. met with Kristen Walsh and an in-person interpreter was provided for this meeting.

27. On or about July 12, 2024, S.B. attended his first Intensive Outpatient Program (IOP) class taught by Kristen Walsh from 8:30 am to 12 pm and an in-person interpreter was provided. Thereafter, S.B. attended IOP classes on Monday, Wednesday, and Friday mornings until July 24 when he could no longer commute to the facility because his car broke down and he could not afford transportation expenses.

28. In October 2024, S.B. experienced a severe relapse and became homeless. He contacted Monroe Harbor Light to seek help and this time he sought to enroll in the residential program to avoid issues with transportation and receive support in a clean environment.

29. On or about October 14, 2024, S.B. entered Monroe Harbor Light's residential program.

30. In addition to individual therapy sessions and medical treatments such as detox or "Med Pass," the residential program includes new client orientation, Process/Skills Group, Bible Study, Spiritual Wellness, Health and Wellness, Family Education, Step Study, Recovery Support, SMART Recovery lectures, "Med" lectures, Narcotics Anonymous and Alcoholics Anonymous meetings, Client Government meetings, and didactic sessions such as Relapse Prevention, Life Skills, Trauma-Informed Skills, Healthy Boundaries, and Communication Skills. The residential program also provides recreational activities, including group field trips, as well as meals and smoke breaks where residents and staff interact with one another.

31. Monroe Harbor Light did not provide interpreters, either remotely via VRI or on-site, for orientation.

32. Even though he was in-patient, S.B. was required to attend the outpatient (IOP) classes on Monday, Wednesday, and Friday mornings, instead of the residential program sessions that conflicted with IOP classes. IOP classes are not part of the residential program and only offered to commuters of the non-residential program.

33. Monroe Harbor Light provided VRI only for the IOP classes on Mondays, Wednesdays, and Fridays, from 8:30 am to 12 pm, and for an additional

7

30 minutes on Wednesdays until 12:30 pm for individual therapy sessions with Kristen Walsh.

34. Monroe Harbor Light did not provide interpreting services, either remotely via VRI or on-site, for any other service, program, or activity outside those times frames.

35. For example, Monroe Harbor Light did not provide interpreters for the lectures, group therapy sessions, Narcotics Anonymous or Alcoholics Anonymous meetings, and didactic meetings of the residential program.

36. Without qualified interpreters present, S.B. could not understand what was being said and did not have access to effective communication.

37. S.B. was either forced to sit through sessions without an ASL interpreter or stayed in his room isolated from everyone else.

38. S.B. was given conflicting information about whether he was required to attend the residential program sessions if an ASL interpreter was not available.

39. Additionally, during those limited times when Monroe Harbor Light provided VRI, it often resulted in ineffective communication.

40. VRI is a service that uses video conferencing technology and equipment. With VRI, the interpreter appears via videoconference and is not physically present in the room with the individuals whose conversations the interpreter is supposed to interpret.

41. When Monroe Harbor Light used VRI, the interpreter was often not able to see or hear all information which is being relayed and connectivity issues can cause buffering, pixelation, or lag. Since the VRI was blurry, frequently froze, and the interpreter could not hear the other individuals in the room, S.B. did not have access to effective communication.

42. Defendants also failed to provide auxiliary aids and services to enable S.B. to communicate with his peers during mealtimes and breaks, depriving him of the peer rapport and community that is an important part of the program that Defendants provide for individuals without disabilities.

43. S.B. repeatedly notified Defendants of his communication difficulties.

44. Despite repeated notice from S.B. about the ineffective communication, Defendants did not take corrective action to ensure that qualified ASL interpreters were provided for all programs, services, and activities to ensure that S.B. has full and equal access to the program.

45. S.B.'s counsel sent a letter to Christopher Miller, the director of Monroe Harbor Light, describing Defendants' legal obligations and requesting that Defendants immediately begin providing qualified interpreters.

46. Neither Mr. Miller nor any other individual from Defendants responded to S.B.'s counsel's letter.

47. As a result of Defendants' failure to provide qualified interpreters, S.B. suffered significant emotional distress, humiliation, frustration, and embarrassment at not being able to participate fully in all the programs, services, and activities open to similarly situated individuals without disabilities, and because of this he was forced to leave the program.

48. S.B. has also suffered economic harm in that he has been deprived of the benefits of the residential program, which he must now pay for on his own now that he is no longer in the residential program and the funding that he received to stay at Monroe Harbor Light is not available to be used anywhere else.

49. S.B. has not been able to find another rehabilitation program to participate in which he can afford.

50. Additionally, S.B. has suffered out-of-pocket expenses associated with no longer being in a fully-paid-for residential placement, including basic living expenses such as housing and food.

51. S.B. intends to return to Monroe Harbor Light as a resident if and when qualified interpreters are provided to ensure that the program is fully accessible to him and that he has an opportunity equal to that of other individuals without disabilities to participate in all of the programs, services, and activities that Monroe Harbor Light offers to residents.

## COUNT I
## SECTION 504 OF THE REHABILITATION ACT OF 1973

52. Plaintiff repeats and re-alleges the foregoing paragraphs in support of this claim.

53. Plaintiff is substantially limited in the major life activities of hearing, speaking, and communicating, and therefore an individual with a disability under section 504 of the Rehabilitation Act, 29 U.S.C. § 794.

54. Section 504 provides that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of his or her disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a).

55. During all relevant times, Defendants were recipients of federal financial assistance subject to section 504.

56. Plaintiff was and is qualified to receive services from Defendants.

57. Defendants discriminated against Plaintiff on the basis of his disability by denying the Plaintiff auxiliary aids and services necessary to ensure that Plaintiff has full and equal access to all of the programs, services, and activities at Monroe Harbor Light.

58. As a result of Defendants' failure to provide qualified interpreter services, Plaintiff did not have full and equal access to Defendants' programs, services, and activities during his stay at the rehabilitation facility.

59. Defendants discriminated against Plaintiff by assigning him to different programs and/or imposing different requirements based on his disability.

60. Defendants intentionally discriminated against Plaintiff solely on the basis of his disability, in violation of section 504.

61. Plaintiff suffered damages as a result of Defendants' conduct.

## COUNT II
## PATIENT PROTECTION AND AFFORDABLE CARE ACT

62. Plaintiff repeats and re-alleges the foregoing paragraphs in support of this claim.

63. Pursuant to section 1557 of the Patient Protection and Affordable Care Act, "an individual shall not, on the ground prohibited under . . . section 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794), be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any health program or activity, any part of which is receiving Federal financial assistance." 42 U.S.C. § 18116(a).

64. Section 1557 regulations state that covered entities "shall take appropriate steps to ensure that communications with individuals with disabilities

are as effective as communications with others in such programs or activities" in accordance with regulations implementing Title II of the Americans with Disabilities Act, 28 C.F.R. §§ 35.160-35.164. 45 C.F.R. § 92.102(a).

65. Section 1557 regulations further state that covered entities "shall provide appropriate auxiliary aids and services" including sign language interpreters. 45 C.F.R. § 92.102(b).

66. Such sign language interpreters must "[a]dhere[] to generally accepted interpreter ethics principles, including client confidentiality" and be "able to interpret effectively, accurately, and impartially, both receptively and expressively, using any necessary specialized vocabulary, terminology and phraseology." 45 C.F.R. § 92.102(b)(2).

67. Plaintiff is substantially limited in the major life activities of hearing, speaking, and communicating, and therefore an individual with a disability.

68. At all times relevant to this action, Defendants received federal financial assistance and have been principally engaged in the business of providing health care.

69. Defendants discriminated against Plaintiff on the basis of his disability by denying the Plaintiff auxiliary aids and services necessary to ensure effective communication between the Plaintiff and Defendants.

70. Defendants discriminated against Plaintiff by assigning him to different programs and/or imposing different requirements based on his disability.

71. Defendants discriminated against Plaintiff by failing to provide qualified interpreters and by not providing Plaintiff with the same opportunity as similarly situated hearing individuals to participate in and benefit from all aspects of Defendants' programs, services, and activities.

72. Defendants intentionally discriminated against Plaintiff solely on the basis of his disability, in violation of section 1557.

73. Plaintiff suffered damages as a result of Defendants' conduct.

**COUNT III**
**MICHIGAN PERSONS WITH DISABILITIES CIVIL RIGHTS ACT**

74. Plaintiff repeats and re-alleges the foregoing paragraphs in support of this claim.

75. The purpose of the Michigan Persons with Disabilities Civil Rights Act states that "The opportunity to obtain . . . [the] full and equal utilization of public accommodations . . . without discrimination because of disability is guaranteed by this act and is a civil right." Mich. Comp. Laws § 37.1102.

76. S.B. is substantially limited in the major life activities of hearing, speaking, and communicating. Accordingly, he is an individual with a disability as defined in Mich. Comp. Laws § 37.1103(d).

77. The Defendants are public accommodations as defined by Mich. Comp. Laws § 37.1301 because they are health facilities that extend, offer, sell, or otherwise make available their services, facilities, privileges, advantages, and accommodations to members of the public.

78. Defendants discriminated against Plaintiff in violation of Mich. Comp. Laws § 37.1302 by failing to provide qualified interpreters and not providing S.B. with the same opportunity as similarly situated hearing individuals to participate in and benefit from all aspects of Defendants' programs, services, and activities.

79. As a result of Defendants' failure to provide qualified interpreter services, Plaintiff did not have full and equal access to Defendants' programs, services, and activities during his stay at the rehabilitation facility.

80. Defendants discriminated against Plaintiff by assigning him to different programs and/or imposing different requirements based on his disability.

81. Defendants' failure to provide appropriate auxiliary aids and services for individuals with hearing disabilities denied S.B., solely on the basis of his disability, access to the utilization and benefits of the place of public accommodation.

82. Defendants' conduct was intentional discrimination.

83. Plaintiff suffered damages as a result of Defendants' conduct.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter an Order:

    a.    Issuing a declaratory judgment that Defendants' policies, procedures, and practices subjected Plaintiff to discrimination in violation of section 504 of the Rehabilitation Act of 1973, section 1557 of the Patient Protection and Affordable Care Act, and the Michigan Persons with Disabilities Civil Rights Act;

    b.    Issuing an injunction requiring Defendants to readmit Plaintiff to Monroe Harbor Light and provide qualified, on-site interpreters for all services, programs, and activities in which he is eligible to participate;

    c.    Awarding compensatory damages, including economic damages;

    d.    Awarding nominal damages;

    e.    Awarding reasonable costs and attorneys' fees; and

    f.    Awarding any and all other relief that may be necessary and appropriate.

## JURY DEMAND

Plaintiff hereby demands that this action be tried before a jury.

This the 15th day of November 2024.

                            Respectfully submitted,

                            /s/ Angie Martell

Angie I. Martell
Iglesia Martell Law Firm, PLLC
2723 S. State Street, Suite 150
Ann Arbor, MI 48104
angie@iglesiamartell.com
Tel: 734.369.2331

Mary C. Vargas
Michael Steven Stein
Stein & Vargas, LLP
800 Maine Street SW, Suite 200
Washington, DC 20024
mary.vargas@steinvargas.com
michael.stein@steinvargas.com
Tel: 240.793.3185
Fax: 888.778.4620

Anna Bitencourt
Deaf Equality
c/o Stein & Vargas, LLP
401 N. Market Street
Frederick, MD 21701
anna.bitencourt@deafequality.org
Tel:  773.461.0660