UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

S.B.,

       Plaintiff,

v.

SALVATION ARMY, et al.,

       Defendants.
_____/

Case No. 24-cv-13027

HON. MARK A. GOLDSMITH

**OPINION & ORDER
DENYING PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER OR
PRELIMINARY INJUNCTION (Dkt. 3)**

Before the Court is Plaintiff S.B.'s motion for a preliminary injunction (Dkt. 3). For the reasons that follow, the Court denies S.B.'s motion.[1]

**I. BACKGROUND**

S.B. brings this action under the Rehabilitation Act of 1973, 29 U.S.C. § 794; the Patient Protection and Affordable Care Act, 42 U.S.C. § 18116; and the Michigan Persons with Disabilities Civil Rights Act of 1976, Mich. Comp. Laws §§ 37.1101 et seq., against Defendants Salvation Army and Salvation Army Services, Inc. Compl. at 1 (Dkt. 1).

S.B. is a deaf individual who requires American Sign Language (ASL) interpreters for effective communication and who struggles with substance abuse. S.B. Decl. ¶¶ 1–11 (Dkt. 3-1). In July 2024, S.B. enrolled in the intensive outpatient program at Monroe Harbor Light, a program operated by Defendants, for treatment for his drug and alcohol addiction. Id. ¶¶ 16–19. At all sessions for the program, Defendants provided S.B. with two in-person ASL interpreters or one

---

[1] In addition to S.B.'s motion, the briefing includes Defendants' response (Dkt. 16) and S.B.'s reply (Dkt. 20).

in-person and one remote ASL interpreter. Christopher Miller Decl. ¶ 11 (Dkt. 17). While the intensive outpatient program was supposed to take about three months to complete, S.B. voluntarily dropped out of the program after about three weeks, citing transportation difficulties. Id. ¶ 13.

In October 2024, S.B. reenrolled in the intensive outpatient program at Monroe Harbor Light. Id. ¶¶ 17–22. This time, Defendants provided S.B. with free housing at Monroe Harbor Light and provided S.B. with video remote interpreting (VRI) services and remote ASL interpreters. Id. ¶ 35. Defendants attempted to secure in-person interpreters for S.B. by calling three agencies, but due to staffing and scheduling issues, they were unable to arrange in-person interpreters. Id. ¶¶ 33–34. S.B. alleges that the VRI technology often malfunctioned and was inadequate to facilitate his participation in the programing. Mot. at 3. In addition to the VRI, Defendants also allowed S.B. to use voice-to-text applications and written communication during sessions. Miller Decl. ¶ 36.

In addition to the intensive outpatient programing in which S.B. was enrolled, Defendants offered several other programs. Miller Decl. ¶ 25. S.B. asked and was given permission to attend some of the sessions for these other programs, but Defendants told him that interpreter services would not be provided at those sessions. Id. ¶¶ 16, 25, 26. S.B. left the program again without obtaining permission and discharged himself against the advice of the medical staff, only about two weeks after reentering. Id. ¶ 23.

S.B. asserts that denying him the qualified ASL interpreter services necessary for effective communication violated his rights under federal and state law. S.B. filed the instant action and a motion for a preliminary injunction pursuant to Federal Rule of Civil Procedure 65. He seeks an

2

order to compel Defendants to provide him with qualified ASL interpreters for all programs, services, and activities at Monroe Harbor Light addiction rehabilitation program. Mot. at 18–19.

## II. ANALYSIS

### A. Motion for Preliminary Injunction

To determine whether to grant a preliminary injunction or temporary restraining order, a district court must consider: (i) whether the movant has a strong likelihood of success on the merits; (ii) whether the movant would suffer irreparable injury without the injunction; (iii) whether issuance of the injunction would cause substantial harm to others; and (iv) whether the public interest would be served by the issuance of the injunction. Baker v. Adams Cnty./Ohio Valley Sch. Bd., 310 F.3d 927, 928 (6th Cir. 2002). These four factors "are factors to be balanced, not prerequisites that must be met." Hamad v. Woodcrest Condo. Ass'n, 328 F.3d 224, 230 (6th Cir. 2003) (punctuation modified).

### 1. Irreparable Harm

"Irreparable harm is an indispensable requirement for a preliminary injunction, and even the strongest showing on the other factors cannot justify a preliminary injunction if there is no imminent and irreparable injury." Memphis A Philip Randolph Inst. v. Hargett, 978 F.3d 378, 391 (6th Cir. 2020) (punctuation modified). If a plaintiff is not "facing imminent and irreparable injury," there is "no need to grant relief now as opposed to the end of the lawsuit." D.T. v. Sumner Cty. Sch., F.3d 324, 327 (6th Cir. 2019) (emphasis in original). The alleged injury "must be both certain and immediate, not speculative or theoretical. Id. (punctuation modified).

S.B.'s alleged irreparable harm is the "risk of relapse" with respect to his substance abuse struggles. Mot. at 14. However, as Defendants correctly point out, the risk of relapse is neither certain nor actual. Resp. at 18. The United States Supreme Court has frequently reiterated that

3

plaintiffs seeking a preliminary injunction must "demonstrate that irreparable injury is <u>likely</u> in the absence of an injunction." Winter v. NRDC, Inc., 555 U.S. 7, 22 (2008) (emphasis in original). The mere possibility of irreparable harm is not enough to warrant an extraordinary remedy such a preliminary injunction. Id.

Here, S.B. has not demonstrated that an irreparable injury—such as death or other serious harm resulting from a potential relapse—is likely absent an injunction. S.B.'s claims are further undermined by the fact that S.B. could resume treatment at Harbor Light at any time and has twice left the program voluntarily. Defendants are not preventing S.B. from receiving treatment. Defendants provided S.B. with treatment; S.B. considered the accommodations for the treatment inadequate; and he decided to receive no treatment rather than what he considered suboptimal treatment. S.B. has not demonstrated that irreparable injury is likely in the absence of an injunction.

**2. Likelihood of Success, Substantial Harm to Others, and Public Interest**

A movant "must show more than a mere possibility of success to obtain a preliminary injunction." Montgomery v. Carr, 848 F. Supp. 770, 775 (S.D. Ohio 1993). "In general, the likelihood of success that need be shown will vary inversely with the degree of injury to the plaintiff will suffer absent an injunction." In re DeLorean Motor Co., 755 F.2d 1223, 1229 (6th Cir. 1985). "At the preliminary injunction stage, a district court is not required to resolve doubtful or difficult questions of law or disputed questions of fact." (punctuation modified). Montgomery, 848 F. Supp. at 775.

S.B. contends that under the Rehabilitation Act of 1973, the Affordable Care Act, and the Michigan Persons with Disabilities Civil Rights Act of 1976, he cannot be excluded from participation in and the benefits of a health program, any part of which is receiving federal assistance. See Mot. at 12–13. Based on the record presented to date, the Court concludes that

4

S.B. has not made a sufficient showing that he is likely to succeed on the merits of his asserted equal access and civil rights claims under these disability laws.

To successfully establish his claims, S.B. must show that (i) he is an individual with a disability, (ii) he is otherwise qualified to participate in the program at issue, (iii) the program receives federal financial assistance, and (iv) he was discriminated against solely by reason of his disability. Hill v. Bradely Cty. Bd. Of Educ., 295 F. App'x 740, 742 (6th Cir. 2008). Here, both parties correctly agree that the first and third elements are satisfied. The dispute between the parties concerns the second and fourth elements.

The "program at issue" is the intensive outpatient program and not the other programs in which S.B. was not enrolled. S.B. makes no allegations regarding his first stint in the program in July; rather, his allegations are confined to his reenrollment in October. He argues that he was entitled to in-person translation, rather than the virtual translation that he received, and alternatively, even if VRI would have been sufficient, it was not actually available due to technical difficulties. Mot at 11–13. But as Defendants correctly assert, federal regulations explicitly allow for VRI services for the disabled.[2]

---

[2] The Code of Regulations provides that:

> A public entity that chooses to provide qualified interpreters via VRI services shall ensure that it provides –
> (1) Real-time, full-motion video and audio over a dedicated high-speed, wide-bandwidth video connection or wireless connection that delivers high-quality video images that do not produce lags, choppy, blurry, or grainy images, or irregular pauses in communication;
> (2) A sharply delineated image that is large enough to display the interpreter's face, arms, hands, and fingers, and the participating individual's face, arms, hands, and fingers, regardless of his or her body position;
> (3) A clear, audible transmission of voices; and

As for S.B.'s contention that technical difficulties such as lags and choppy connection deprived him of effective communication, courts have routinely rejected such claims when the glitches are only occasional. Bax v. Drs. Med. Ctr. of Modesto, Inc., 52 F.4th 858, 870–871 (9th Cir. 2022) (rejecting "the notion that isolated technical glitches" in VRI systems "necessarily establish ineffective communication"). Nevertheless, determining whether auxiliary aids such as VRI are effective is an inherently fact-intensive inquiry. Chisolm v. McManimon, 275 F.3d 315, 327 (3d Cir. 2001). "[C]onsistent and persistent problems could lead a reasonable finder of fact to conclude that the VRI denied" a plaintiff effective communication. Juech v. Children's Hosp. and Health Sys., Inc., 353 F. Supp 772, 782 (E.D. Wis. 2018).

Here, the facts in the record are both scant and conflicting. To establish the extent of VRI malfunction, S.B. relies solely on his deposition testimony:

> Whenever it was used in the IOP classes and in meetings with the on-site therapist, the VRI technology did not work well. There were frequent problems with audio and video. The video was often pixelated and the screen kept freezing. In classes or meetings involving multiple people, the VRI couldn't hear the instructor or my classmates. Because of the poor video quality, I often struggled to understand the interpreters and the interpreters struggled to understand me. I could tell the interpreters were not voicing my comments fully or accurately because my classmates often did not react to my responses or comments. For example, they wouldn't comment or my stories, or clap, or say words of encouragement like they did for others. The lack of communication access prevented me from establishing a connection and rapport with my classmates.

S.B. Decl. ¶ 27. Defendants, on the other hand, provide a didactic note, from one of the sessions S.B. attended in October, which states that S.B. "participated in discussion" and "interacted

---

(4) Adequate training to users of the technology and other involved individuals so that they may quickly and efficiently set up and operate the VRI.

28 C.F.R. § 35.160(d).

appropriately with other consumers" and that S.B. "appears to have benefited from the session." App. at PageID.160 (Dkt. 17).

Given the dispute in basic facts essential to S.B.'s claims, the Court finds that he has not made a sufficient showing at this stage that he will likely prevail in establishing that communication was ineffective. See Sunless, Inc. v. Palm Beach Tan, No. 5:21 CV 248, 2021 WL 477439, at *5 (N.D. Ohio June 30, 2021) (declining to definitively decide which conclusion the conflicting evidence supported and stating that "on the current record and given the parties various arguments at this point, the court concludes" that the plaintiff's evidence "is not sufficient to demonstrate. . . a strong likelihood of prevailing on the merits") (punctuation modified).

The failure to establish likely success on the merits and irreparable injury is usually fatal to a movant's request for preliminary relief. Reilly v. City of Harrisburg, 858 F.3d 173, 179 (3d Cir. 2020) (stating that failure to "meet the threshold for the first two most critical factors" bars temporary or preliminary injunctive relief) (punctuation modified); Curtis 1000, Inc. v. Martin Gonzales v. Nat'l Bd. of Med. Examiners, 225 F.3d 620, 625 (6th Cir. 2000) (stating that "a finding that there is simply no likelihood of success on the merits is usually fatal"); Friendship Materials, Inc. v. Mich. Brick, Inc., 679 F.2d 100, 103 (6th Cir. 1982) ("Despite the overall flexibility of the test for preliminary injunctive relief, and the discretion vested in the district court, equity has traditionally required such irreparable harm before an interlocutory injunction may be issued."). S.B.'s failure on these two factors argues forcefully against granting his motion.

The remaining two factors do nothing to advance S.B.'s position. Defendants substantiate that granting S.B.'s motion would create significant programming hurdles, as finding sufficient proficient interpreters would be most challenging, not to mention a budgetary drain. The public

interest, as well, is not served if a charitable organization is ordered to pursue elusive programming not mandated by law.

### III. CONCLUSION

For the foregoing reasons, the Court denies S.B.'s motion for a preliminary injunction (Dkt. 3). However, the Court recognizes that S.B. has asserted claims that are worthy of being explored on an expedited basis. To that end, counsel are directed to confer promptly on adopting an expedited schedule for completion of discovery, filing of dispositive motions, and trial. They must file a discovery plan by May 20, 2025. The Court will conduct a conference by Zoom on June 12, 2025, at 4:30 pm to finalize the schedule.

**SO ORDERED.**

Dated: May 13, 2025             s/Mark A. Goldsmith
    Detroit, Michigan         MARK A. GOLDSMITH
                                           United States District Judge